# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| JEROME E. MILKO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action File No.: |
| ) | |
| NATIONAL ASSOCIATION OF ) | |
| REALTORS, ) | |
| ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants. ) | |

## VERIFIED COMPLAINT

### PRELIMINARY STATEMENT AND INTRODUCTION

1.  Plaintiff Jerome E. Milko ("Plaintiff" or "Milko") is an individual and citizen of the State of Georgia.

2.  Plaintiff is a Realtor and broker in the State of Maryland, State of Georgia, and the State of Delaware and as such Plaintiff is required to be a member of the National Association of Realtors ("Defendant NAR"), the Costal Association of Realtors, and/or the Delaware Association of Realtors to meaningfully participate in the real estate industry.

3.  Furthermore, Defendant NAR's adoption and adherence to the National Association of Realtors "Three-way Agreement" constitutes a violation of federal

anti-trust law, as membership in one organization at any level requires compulsory membership in the other two organizations.

4. Plaintiff is required to be a member of no less than three professional associations, even if the Plaintiff did not wish to join a professional association.

5. Plaintiff challenges the compulsory membership required by Defendant NAR in these State, Local, and National associations upon what is tantamount to violations of state and federal anti-trust laws, and an unfair restraint on trade and conspiracy.

6. Defendant NAR's requirement of triple membership to meaningfully participate in the real estate market encourages discrimination between sellers, buyers, consumers, agents, and brokers, and the Defendant will continue protecting their cash flow from their fees obtained through compulsory membership.

7. This is an antitrust action seeking damages and injunctive relief for violations of Section 1, of the Sherman Antitrust Act, 15 U.S.C. §1, by Defendant National Association of Realtors ("Defendant NAR"), as they require real estate market participants to pay membership "fees" to not only Defendant NAR, but also related state and local organizations affiliated with Defendant NAR at all times.

8. Defendant has been unjustly enriched and collected exorbitant membership "fees" from the Plaintiff as a prerequisite to meaningful participation in the real estate market.

9. Defendant NAR has demonstrated that the membership "fees" which constitute a barrier to entry into the real estate market, have been used to personally and financially benefit what Defendant NAR describes as "volunteers."

10. "Volunteers" with Defendant NAR have used membership "fees" collected from the Plaintiff and other real estate market participants to pay for excessive salaries for volunteer positions, for "perks" such as hotel resort stays for volunteers and spouses, golfing outings, wine, dinners, Broadway tickets, pet-care, and flights which constitute free luxury vacations for said "volunteers" and their relatives. [1][2]

11. Plaintiff has been denied the ability to make a competitive choice over which professional associations he would like to join as Defendant NAR requires the Plaintiff to join and pay membership dues to at minimum two (2) or more additional professional associations which constitutes an improper restraint of trade and commerce.

---

[1] https://web.archive.org/web/20241123142652/https://www.nytimes.com/2024/11/18/realestate/national-association-realtors-spending.html "Chauffered Cars and Broadway Tickets: Inside the National Realtors Group"

[2] https://www.youtube.com/watch?v=70KWnGt1jtU "NAR Wastes Millions! NY Times Exposes All"

## JURISDICTION AND VENUE

12. The anticompetitive rules, policies, and practices alleged in this Complaint violate the Sherman Act (15 U.S.C. §1). The relevant National Association of Realtors ("NAR") agreements have routinely been adopted, applied, and enforced in this District for the relevant period. The NAR agreements govern the conduct of local real estate brokers and local real estate sales agents conducting real estate business. Defendant NAR has engaged in interstate and intrastate commerce through implementing and enforcing the NAR agreements, which require continuous compulsory membership, exorbitant membership fees (which are used to financially benefit "volunteers" of Defendant NAR) and force the Plaintiff to purchase no less than three memberships from Defendant NAR and their affiliated state chapters to call himself a "Realtor®" in order to meaningfully participate in the real estate market.

13. Defendant NAR transacts business throughout the United States. Defendant NAR's rules, policies, and practices govern the conduct of its members in all 50 states, including the conduct of NAR's REALTOR® real estate association members and the conduct of NAR's individual member brokers and their affiliated agents and sales associates.

14. Defendant NAR transacts substantial business in this District through the collection of dues. Venue is appropriate in this District under 15 U.S.C. § 22.

15. This Court has personal jurisdiction over Defendant NAR on multiple bases, including that Defendant: (1) will be properly served; (2) transacted business in this District, and (3) committed substantial acts in furtherance of an unlawful scheme in the United State, including this District.

16. Defendant NAR has received millions of dollars in forced membership "fees", unlawfully obtained through the implementation of and forced adherence to Defendant NAR's compulsory membership requirements emanating from Defendant NAR.

17. This Court has personal jurisdiction over Defendant NAR who: (i) transacted substantial business within offices in this District; (ii) transacted business with the Plaintiff in this District; (iii) had substantial presence and contacts in this District; and (iv) committed unlawful acts in furtherance of Defendant NAR's actions in this District.

18. Venue is proper in this District under 15 U.S.C. § 22 and under 28 U.S.C. §1391(b), (c), and (d). Defendant NAR's transacted business can be found, in this District; a substantial part of the events giving rise to Plaintiff's claims arose in and from this District; and a substantial portion of the affected trade and commerce described herein has been carried out in and from this District.

## PARTIES

19.     Plaintiff Milko maintains his real estate license in Maryland, Georgia and Delaware at all times relevant to this suit and submits himself to the jurisdiction of this Court.

20.     Defendant National Association of Realtors ("Defendant NAR") is a not-for-profit corporation organized under the laws of Illinois, a citizen of Illinois with its principal place of business at 430 North Michigan Avenue, Chicago, Illinois. Defendant NAR engages in advertising aimed at all U.S. States and Territories and transacts business within the States of Maryland, Georgia, and Delaware, in addition to all U.S. States and territories.  Defendant NAR is a national trade association of state and regional real estate associations, brokers, agents and other licensed entities and individuals that conduct business in the market for real estate services. With over 1.5 million members, Defendant NAR is the largest trade association in the United States. NAR members consist of over 1,200 local realtor associations as well as fifty state and territorial realtor associations. Defendant NAR establishes and enforces rules, policies and practices that are adopted by NAR member state and local realtor associations and by member real estate professionals who are engaged in real estate brokerages across the United States. Defendant NAR holds a U.S. trademark over the term REALTOR®. All of Defendant NAR's state and local realtor association

members and its members that are real estate agents and brokers are part of the greater NAR REALTOR® trade association network.

## FACTUAL ALLEGATIONS COMMON TO ALL DEFENDANTS

21. Plaintiff Milko is an individual and citizen of Georgia.

22. Real estate transactions in the United States typically occur between a real estate owner selling property ("Seller") and a person who is buying real estate ("Buyer").

23. Real estate Sellers and Buyers are usually represented by state licensees: (i) the real estate broker (also known as a "brokerage firm"); and (ii) the individual real estate licensee or agent. Brokers and brokerages, as sponsors, are legally responsible for the actions of their licensed realtors or agents.

24. Only a licensed broker is typically permitted to represent a Seller or a Buyer in a real estate transaction. Real estate brokerage contracts with Sellers and Buyers are with brokers, not agents, for this reason, and all payments to individual realtors or agents pass through brokers. The vast majority of real estate Sellers and Buyers across the country utilize a broker to assist in a real estate transaction. [3]

---

[3] In 2022 in the U.S., 89% of Buyers purchased their home using the assistance of a real estate agent and 89% of Sellers sold their home with assistance from a real estate agent. *Quick Real Estate Statistics*, NAT'L ASS'N OF REALTORS (July 7, 2024), https://www.nar.realtor/research-and-statistics/quick-real-estate-statistics

25. In a typical real estate transaction, the Seller retains his or her own broker and a real estate Buyer typically retains his or her own broker.

26. Real estate brokers and agents must join The National Association of Realtors in order to obtain the title of REALTOR®. Defendant NAR holds a U.S. trademark over the term REALTOR®. NAR defines REALTOR® as follows:

27. REALTORS® are licensed professionals who facilitate property transactions between buyers and sellers and are members of NAR (National Association of REALTORS®), adhering to a strict Code of Ethics and high standards of conduct. All REALTORS® are licensed real estate professionals, but not all real estate agents are REALTORS®.

28. Plaintiff is licensed real estate agent and broker in the State of Maryland, State of Georgia, and the State of Delaware and as such Plaintiff in order to call himself a Realtor® is forced to be a member of the following associations and pay dues in order to meaningfully participate in the real estate industry: The National Association of Realtors, the Costal Association of Realtors, the Maryland Association of Realtors, and/or the Delaware Association of Realtors.

29. Additionally, the Plaintiff cannot pick and choose which associations he may join under Defendant NAR's Three-way Agreement[4] which states that "all local associations and their REALTOR® members are members of the state

---

[4] https://www.nar.realtor/about-nar/policies/the-three-way-agreement

association of REALTORS® in the state where their association is located and also of the National Association of REALTORS®."

30. Defendants each require payment of annual or quarterly membership dues to the local, state, and national organizations without exception.

31. Membership and payment of dues is compulsory and non-negotiable.

32. Plaintiff has paid annual dues to Defendant NAR for thirty-seven (37) years.

33. Plaintiff has paid annual dues to the Maryland Association of Realtors for thirty-seven (37) years.

34. Plaintiff has paid annual dues to the Delaware Association of Realtors for thirty-seven (37) years.

35. Plaintiff has paid annual dues to the Coastal Association of Realtors for thirty-seven (37) years, including years when the Coastal Association of Realtors existed as two separate entities.

36. Plaintiff has paid approximately $26,196.00 in annual dues and special assessments to the Defendants for the past thirty-seven (37) years.

37. Plaintiff challenges the compulsory membership in Defendant NAR's multiple and duplicitous associations as tantamount to violations of state and federal anti-trust laws, an unfair restraint on trade, and Defendant NAR has engaged in this conspiracy to restrain competitors who do not join Defendants' trade associations.

38. Defendant NAR's compulsory requirement of membership to meaningfully participate in the real estate market encourages discrimination among sellers, buyers, consumers, agents, and brokers and Defendant NAR will continue to protect their cash flow from their fees obtained through de facto compulsory membership by way of membership in three or more professional associations.

39. Defendant NAR established and continues to enforce the agreements, policies, and practices, that are adopted by Defendant NAR's 1,200+ local associations (also called "Member Boards") and their affiliated Multiple Listing Services ("MLS") that govern the conduct of Defendant NAR's approximately 1.5 million-member REALTORS® who are engaged in real estate brokerages across the United States.

40. MLS facilitates the publishing and sharing of information about real estate for sale in a geographic area. The membership of an MLS is generally comprised of nearly all real estate brokers and their affiliated agents in an MLS's service area. The geographic coverage of the MLS serving an area normally establishes the geographic market in which competition among brokers occurs.

41. In each area an MLS serves, the MLS will include or "list" the vast majority of real estate that is for sale through a real estate broker in that area. In most areas, the local MLS provides the most up-to-date, accurate, and comprehensive compilation of the area's real estate listings. Listing brokers will use the MLS to

market sellers' properties to other brokers and agents participanting in the MLS and, through those other brokers and agents, to potential real estate buyers.

42. Defendant NAR, through its Member Boards, controls a substantial number of the MLS's in the United States. Defendant NAR promulgates rules, policies, and practices governing the conduct of NAR affiliated MLS's that are set forth annually in the Handbook on Multiple Listing Policy ("Handbook"). Under the terms of the Handbook, affiliated REALTOR® associations and MLS's "must conform their governing documents to the mandatory MLS policies established by [Defendant NAR's] Board of Directors to ensure continued status as member boards and to ensure coverage under the master professional liability insurance program." National Association of REALTORS®, Handbook on Multiple Listing Policy 2020 (32nd ed. 2020), at iii.[5]

43. Defendant NAR's and its affiliated associations and MLS's adoption and enforcement of these rules, policies, and practices, which are described in more detail below, reflect concerted action between horizontal competitors and constitute agreements among competing real estate brokers.

44. A cornerstone of the Defendant NAR REALTOR® organizational system is what is known as the "three-way agreement."[6] On the one hand, that

---

[5] https://www.nar.realtor/sites/default/files/documents/handbook-on-mls-policy-2024-06-28.pdf
[6] https://www.car.org/-/media/CAR/Documents/Your-CAR/PDF/Member-Dues-and-Benefits/2023-Frequently-Asked-Questions.pdf

agreement grants state and local associations the ability to control the terms REALTOR® and REALTOR-ASSOCIATE®, while state and local associations must adhere to the NAR Code of Ethics and enforce it within their respective jurisdictions while they must also properly regulate the use of the terms REALTOR® and REALTOR-ASSOCIATE® within their respective jurisdictions.[7] "The Three-Way Agreement [also] means that local associations and their REALTOR® members are members of the state association of their local board, and NAR."[8]

45. NAR has gone so far as to bluntly state, "[i]n order to maintain REALTOR® membership, members must pay local, state, and national association dues and assessment."[9] A REALTOR® must, therefore, join all three levels of REALTOR® association or none at all. According to NAR, "[t]here is no ability to bifurcate membership between local, state, or national associations."[10]

46. As noted above, licensees that choose to hold REALTOR® memberships pay their dues individually to NAR, their respective state association and at least one of the local REALTOR® associations within their state.

47. Failure to join one of the local REALTOR® associations, the state level NAR or Defendant NAR likely means expulsion from all three. This would lead to

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] https://www.car.org/-/media/CAR/Documents/Your-CAR/PDF/Member-Dues-and-Benefits/2023-Frequently-Asked-Questions.pdf

blocked access to the real estate lockbox systems controlled by Defendant NAR—rendering a broker or agent unable to access and perform the essential task of showing real estate to potential buyers, despite holding an active real estate license.

48. The NAR mandated three-way agreement is compulsory irrespective of the fact that it is both redundant and financially burdensome for brokers and agents. It makes access to real estate lockboxes maintained by Defendant NAR contingent upon costly triple REALTOR® association membership which many properly licensed agents and brokers can ill afford.

49. Real Estate Agents may sometimes still participate in MLS's service offerings without membership with Defendant NAR and their related state and local associations but pay higher fees than NAR-members or they may be barred from the MLS entirely due to a lack of NAR membership.

50. The mandatory three-way agreement has ensured a guaranteed membership base and has generated huge revenue for NAR and state and local REALTOR® associations throughout the country, making the reasons for its imposition entirely clear. It has also insulated these entities from competition for real estate trade association membership. Absent the three-way agreement, Defendant NAR, along with state and local trade associations would have to compete on the cost of membership dues, fees and quality of services offered to attract dues paying broker and agent members.

51. The mandatory three-way agreement allows NAR, state-level and local trade associations to dispense with such free market fair competition.

52. Because the three-way agreement requires brokers and agents to join all three associations or face exclusion and/or higher costs from performing an essential function of their real estate services, brokers and agents have little choice but to comply with the three-way agreement. This allows Defendant NAR to charge duplicative membership dues, application fees and service fees.

53. This is an antitrust action seeking damages and injunctive relief for violations of Section 1, of the Sherman Antitrust Act, 15, U.S.C. §1, by Defendant NAR as they require real estate market participants to pay membership "fees" to not only Defendant NAR but also related state and local organizations organized under Defendant NAR.

54. Plaintiff currently pays membership "fees" to Defendant NAR, the Maryland Association of Realtors, the Delaware Association of Realtors, and the Coastal Association of Realtors, in order to participate in the real estate markets of the State of Delaware, the State of Georgia, and the State of Maryland.

55. Defendant NAR has engaged in a conspiracy to restrain trade and commerce to limit who can hold themselves out as a Realtor® and limit who can participate in the real estate industry by using the Three-Way Agreement to suppress competitors and limiting access to the title Realtor®.

56. Defendant NAR has been unjustly enriched and collected duplicative membership "fees" from the Plaintiff as a prerequisite to meaningful participation in the real estate market.

57. Defendant NAR has maintained a monopoly not only over the real estate professional association market but have also secured the intellectual property rights to the word "Realtor" meaning that unless an individual is a member of NAR, they cannot call themselves a "Realtor" which is an improper restraint on trade and commerce.

58. Defendants have demonstrated that the membership "fees" which constitute a barrier to entry into the real estate market, have been used to personally benefit what the Defendant National Association of Realtors describes as "volunteers."

59. "Volunteers" with Defendant NAR have used membership "fees" collected from the Plaintiff and other real estate market participants to pay for excessive salaries for volunteer positions, for "perks" such as hotel resort stays for volunteers and spouses, golfing outings, wine, dinners, Broadway tickets, pet-care, and flights which constitute free luxury vacations for said "volunteers."[11] [12]

---

[11] https://web.archive.org/web/20241123142652/https://www.nytimes.com/2024/11/18/realestate/national-association-realtors-spending.html "Chauffered Cars and Broadway Tickets: Inside the National Realtors Group"

[12] https://www.youtube.com/watch?v=70KWnGt1jtU "NAR Wastes Millions! NY Times Exposes All "

60. Plaintiff has been denied the ability to make a competitive choice over which professional associations he would like to join as Defendants have fostered an environment where no other professional associations can compete with Defendants to provide real estate memberships and supporting services, while charging the Plaintiff duplicative fees and failing to provide benefits equal to the fees paid by the Plaintiff.

## CAUSES OF ACTION

### COUNT I: RESTRAINT OF TRADE AND ANTI-TRUST VIOLATIONS PURSUANT TO 15 U.S.C. §§ 1-38 (All Defendants)

61. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above in paragraphs 1-61.

62. The Sherman Anti-Trust Act, codified at 15 U.S.C. §§ 1 – 38, protects trade and commerce against unlawful restraints and monopolies.

63. Defendant NAR's requirement that Plaintiff pay triplicate duplicative fees to at minimum three professional organizations in order to participate meaningfully in the real estate industry constitutes an unfair restraint on trade which is in violation of The Sherman Anti-Trust Act.

64. Such a requirement is a restraint of trade as it deprives Plaintiff of his free choice as to whether or not to be a member and seeks to monopolize the information contained on and access to the MLS and lockboxes of real estate for sale.

65. Defendant NAR's mandatory triple membership requirement in their organizations constitutes a combination of entities which seek to restrain Plaintiff from doing business in the State of Maryland, State of Georgia, and the State of Delaware.

66. Plaintiff has requested that he be allowed to opt out of the "Three-way Membership" requirement promulgated by Defendant NAR and supported and enacted by Defendant NAR but is unable to do so.

67. Defendant NAR's actions in this regard constitutes a violation of the Sherman Antitrust Act and have and will continue to cause Plaintiff to incur damages.

68. Plaintiff has suffered damages in an amount to be proven at trial, but not less than $75,000.00, as a direct and proximate result of Defendants' violations.

## COUNT II: UNJUST ENRICHMENT

69. Plaintiff re-alleges and incorporates by reference herein, all of the allegations contained above.

70. Defendant NAR required triple duplicative membership to be a meaningful market participant in the real estate market, effectively shutting out any

market participants who did not become paying members of Defendant NAR, and at least two local associations (state and regional).

71. Plaintiff would not have joined Defendant NAR and their state and regional organizations but for Defendant NAR's manipulation of the real estate market, and Defendant NAR's requiring market participants to purchase triple duplicative memberships from Defendant NAR to be a meaningful market participant.

72. Plaintiff would not have joined Defendant NAR and their state and local organizations but for Defendants' monopoly over the word "Realtor®", to gain access to MLS offerings, and to receive discounts from some state and regional NAR associations who discount their monthly and/or annual fees with NAR membership.

73. Defendant NAR has conspired to restrain trade and commerce to exercise a monopoly over the real estate industry.

74. Defendant NAR has exercised a monopoly over the real estate industry and has been unjustly enriched.

75. Plaintiff has paid triple and quadruple membership dues to Defendant NAR and their state and regional associations as the only way to be a market participant in the brokerage and real estate industry.

76.     Defendant NAR manipulated the brokerage and real estate industry to reduce the number of market participants and enrich themselves unjustly by gatekeeping access to the brokerage and real estate industry.

77.     Defendant NAR has been unjustly enriched by forcing the Plaintiff to pay triple and at times quadruple duplicative membership fees to NAR and their state and regional associations in order to be a viable market participant in the brokerage and real estate industry.

78.     Defendant NAR has used their ill-gotten gains to financially benefit described "volunteers" which are typically not compensated for their volunteer efforts, with excessive salaries (even post-service for such "volunteers") and luxury perks such a hotel rooms, golf outings, bottles of wine, Broadway tickets, pet services, and other financial compensation. [13] [14]

79.     Plaintiff has suffered damages in an amount to be proven at trial, but not less than $75,000.00, as a direct and proximate result of Defendants' actions.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jerome E. Milko respectfully prays for the following relief:

---

[13] https://www.housingwire.com/articles/nar-scandal-executive-compensation-new-york-times/ "The next NAR scandal is here – and it's about extravagant executive perks"

[14] Former CEO Bob Goldberg paid a $2.6 million annual salary in 2024, received paid memberships in exclusive country clubs, received first-class airfare for personal travel, received expensive car allowances, and received Broadway Tickets to the hit "Hamilton" from the National Association of Realtors.

(a) A jury trial with twelve (12) jurors and two (2) alternates;

(b) Judgment in Plaintiff's favor against Defendant NAR on each of the Counts set forth herein;

(c) An award of damage in an amount to be determined at trial'

(d) An award of costs and attorney fees incurred on Plaintiff's behalf; and

(e) Awarding such other relief as this Honorable Court determines is just to compensate Plaintiff.

Respectfully submitted this 15th day of April, 2025.

**WEENER NATHAN PHILLIPS LLP**

/s/ *Renée A. Morgan, Esq.*
Eric Nathan
Ga. Bar. No.: 535280
Renée Morgan
Ga. Bar. No.: 193064
*Attorneys for the Plaintiff*

5887 Glenridge Drive, NE
Suite 275
Atlanta, Georgia 30328
(T): (770) 392-9004
(E): nathan@wnpllp.com
     rmorgan@wnpllp.com