# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| JEROME E. MILKO,<br>　　　Plaintiff,<br>v.<br>NATIONAL ASSOCIATION OF<br>REALTORS,<br>　　　Defendant. | CIVIL ACTION FILE NO.:<br>1:25-cv-02088-SEG |

## PLAINTIFF'S SUPPLEMENTAL BRIEF ON PERSONAL JURISDICTION UNDER SECTION 12 OF THE CLAYTON ACT

Plaintiff Jerome E. Milko (**Plaintiff** or **Milko**), pursuant to this Court's Order dated March 30, 2026 (DN 17), respectfully submits this Supplemental Brief addressing personal jurisdiction over Defendant National Association of Realtors (**NAR**) under Section 12 of the Clayton Act, 15 U.S.C. § 22.

Personal jurisdiction over NAR is proper under *either* the *Integrated* approach or the *Decoupled/Independent-Clause* approach, and the Court need not resolve the split to deny NAR's motion. If the Court reaches the split, Plaintiff urges adoption of the Decoupled approach, which best honors Section 12's text, respects the basic, historic difference between venue and service of process, and advances the antitrust-enforcement objectives Congress pursued in enacting Section 12 in 1914. Either way, exercising jurisdiction comports with due process, and NAR's motion should be denied.

## I.  BACKGROUND

### A.  The Court's March 30, 2026 Order.

On March 30, 2026, the Court directed the parties to file supplemental briefs addressing personal jurisdiction under Section 12, including the circuit split between the *Integrated* and *Decoupled/Independent-Clause* approaches and the application of each to the facts of this case. DN 17. The Court observed that the Eleventh Circuit has not squarely decided the issue and that district courts within this Circuit have reached different conclusions. *Id.*

### B.  The Statutory Framework.

Section 12 of the Clayton Act, enacted in 1914, reads:

> *Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.*

15 U.S.C. § 22. The statute has two components: a *venue clause* expanding antitrust venue beyond 28 U.S.C. § 1391 to include any district where a corporation *transacts business*; and a *service clause* authorizing process to run *wherever [the defendant] may be found* — that is, nationwide. The interpretive question is whether the service clause's phrase *in such cases* ties the service clause to the venue clause (the Integrated approach), or whether the service clause operates independently (the Decoupled approach).

## II.  THE CIRCUIT SPLIT

### A.  The Integrated Approach (D.C., Second, and Seventh Circuits).

Under the Integrated approach, a plaintiff may invoke the nationwide-service clause only when venue is proper under Section 12's *transacts business* standard. The D.C. Circuit adopted this view in *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350–52 (D.C. Cir. 2000), reasoning that the phrase *in such cases* incorporates the venue clause's requirements. The Second Circuit agreed in *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423–24 (2d Cir. 2005), and the Seventh Circuit followed in *KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718 (7th Cir. 2013), holding that the Clayton Act's venue and nationwide-service-of-process clauses *must be read as an integrated whole*.

Within this Circuit, Judge Proctor's analysis in *In re Blue Cross Blue Shield Antitrust Litigation*, 225 F. Supp.3d 1269, 1297–1303 (N.D. Ala. 2016), adopted the Integrated approach. NAR relies on *Blue Cross Blue Shield* in its Motion to Dismiss. *See* DN 8-1 at 13–15.

### B.  The Decoupled/Independent-Clause Approach (Third and Ninth Circuits).

Under the Decoupled approach, Section 12's service clause stands alone: it authorizes nationwide service in every antitrust case against a corporation regardless of whether Section 12's venue clause is the basis of venue. Two Circuits have squarely adopted this position. The Third Circuit held in *In re Auto. Refinishing*

*Paint Antitrust Litig.*, 358 F.3d 288, 296–97 (3d Cir. 2004), that the nationwide-service provision is available whenever venue is otherwise proper, including under 28 U.S.C. § 1391. The Ninth Circuit reached the same result in *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1179–80 (9th Cir. 2004), following its earlier decision in *Go-Video, Inc. v. Akai Electric Co.*, 885 F.2d 1406 (9th Cir. 1989).

The Ninth Circuit explained in *Action Embroidery* and *Go-Video* that the mere juxtaposition of Section 12's venue and service clauses does not make them analytically interdependent, and that absent a clear indication from Congress, a court should not blur the basic, historic difference between these discrete concepts. *Go-Video*, 885 F.2d at 1413; *Action Embroidery*, 368 F.3d at 1179–80. Because Section 12 authorizes nationwide service, the minimum-contacts inquiry looks to the defendant's national contacts with the United States as a whole. *Action Embroidery*, 368 F.3d at 1180.

## C.  Other Circuits and the Eleventh Circuit.

The Tenth Circuit has not decided the question in the Section 12 context; it addressed a related nationwide-service issue under ERISA. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000). The Eleventh Circuit has not squarely resolved the split. Plaintiff respectfully submits that this Court should follow the Third and Ninth Circuits.

### III.  ARGUMENT

**A.  Jurisdiction Is Proper Under Either Approach.**

The Court may deny NAR's motion without resolving the split. NAR has continuous, systematic national contacts that satisfy the Fifth-Amendment test applied under the Decoupled approach, *see Action Embroidery*, 368 F.3d at 1180, and NAR transacts busines*s* in the Northern District of Georgia within the broad, practical meaning of Section 12, satisfying the Integrated approach, *see GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350–52 (D.C. Cir. 2000). Either way, personal jurisdiction lies.

**B.  If the Court Reaches the Split, It Should Adopt the Decoupled/Independent-Clause Approach.**

The Decoupled approach is the better reading of Section 12. It honors the statutory text, respects the distinct jurisprudential histories of venue and service of process, furthers the antitrust-enforcement purposes that necessitated the Clayton Act, and is consistent with Supreme Court construction of Section 12. The Ninth Circuit's reasoning in *Action Embroidery* and *Go-Video* is particularly persuasive.

*1. Venue and service of process are distinct doctrines; Section 12's juxtaposition does not fuse them.*

Venue and service of process serve different functions. Venue concerns where a case is heard; service concerns how a court acquires jurisdiction over a defendant's person. *See* 28 U.S.C. § 1391; Fed. R. Civ. P. 4. Federal courts have long treated the two as analytically independent. *Action Embroidery*, 368 F.3d at 1179–80; *Go-*

*Video*, 885 F.2d at 1412–13. The inclusion of venue and service provisions in a single sentence joined by a semicolon does not make them automatically interdependent; it simply reflects Congress's practical choice to address two necessary mechanics. Where a case may be brought and ho*w* the defendant may be served. The Ninth Circuit refused to blur the basic, historic difference between these discrete concepts absent a clear indication from Congress. *Go-Video*, 885 F.2d at 1413.

#### 2. *The text is susceptible to the Decoupled reading.*

The antecedent of the words *in such cases* in the service clause can be read, consistent with ordinary English, to mean any suit, action, or proceeding under the antitrust laws against a corporation rather than the narrower Section 12 venue district. On that reading, *in such cases* distinguishes antitrust cases from other federal cases governed by Rule 4; it does not condition nationwide service on venue. Had Congress intended that condition, it could have written "in cases so brought or in cases brought under this section". It did not. *See Auto. Refinishing*, 358 F.3d at 296–97; *Action Embroidery*, 368 F.3d at 1179–80.

#### 3. *The Supreme Court's construction of Section 12 favors the broader reading.*

The Supreme Court has instructed that Section 12 must be construed generously to further Congress's antitrust-enforcement objectives. *Scophony* rejected a *technical* construction and held that *transacts business* reflects *the*

*practical, everyday business or commercial concept of doing business or carrying on business 'of any substantial character.'* United States v. Scophony Corp., 333 U.S. 795, 807 (1948). Earlier, *Eastman Co. v. Southern Photo Co.*, 273 U.S. 359, 374 (1927), emphasized that Section 12 was enacted to relieve persons injured through corporate violations of the antitrust laws from the often-impossible obstacle of resorting to distant forums. That purpose is best served by keeping Section 12's nationwide-service provision available to antitrust plaintiffs; not by withdrawing it wherever a plaintiff finds it easier to establish venue under § 1391.

    *4. Congressional purpose and doctrinal coherence with other nationwide-service statutes.*

    Congress enacted Section 12 to expand the forums available to antitrust plaintiffs and to permit service beyond then-existing procedural limits. *See Go-Video*, 885 F.2d at 1411–13. The Integrated approach inverts that purpose, converting an enabling mechanism into a limitation that forecloses nationwide service whenever a plaintiff cannot also meet Section 12's venue requirement. The Decoupled reading also aligns Section 12 with other federal nationwide-service statutes — the Securities Exchange Act, ERISA, RICO, and the Commodity Exchange Act — under which service operates independently of venue and the minimum-contacts inquiry looks to national contacts. *See, e.g.*, *Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (RICO); *Peay*, 205 F.3d at 1210–13 (ERISA).

### C. Under the Decoupled Approach, NAR's National Contacts Satisfy Fifth-Amendment Due Process.

Under the Decoupled approach, the inquiry looks to NAR's contacts with the United States as a whole. *Action Embroidery*, 368 F.3d at 1180; *Republic of Pan.*, 119 F.3d at 942. NAR is headquartered in Chicago, maintains a Washington, D.C. office, and operates nationwide; its national contacts are continuous, systematic, and extensive. The Eleventh Circuit's reasonableness factors — burden, forum interest, plaintiff's interest, efficiency, and federal policy — all favor jurisdiction. *Id.* at 947–48. NAR is already litigating in Atlanta through retained counsel, Georgia's interest in antitrust claims affecting its real-estate markets is powerful, and witnesses and evidence are concentrated here.

### D. Under the Integrated Approach, NAR Transacts Business in the Northern District of Georgia.

If the Court adopts the Integrated approach, jurisdiction still lies. Section 12's transacts business standard embraces the practical, everyday business or commercial concept of doing business or carrying on busines*s 'of any substantial character.'* *Scophony*, 333 U.S. at 807. Trade and professional associations transact business in a forum through their state and local affiliates when those affiliates serve as the association's conduit for rule-making, enforcement, and member discipline. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 720–24 (3d Cir. 1982); *Sherman Coll. of*

*Straight Chiropractic v. Am. Chiropractic Ass'n, Inc.*, 534 F. Supp. 438, 1511–13 (N.D. Ga. 1982).

> *1. NAR tightly controls the formation, governance, and operations of its Georgia affiliates.*

NAR's relationship with GAR and the Georgia local boards is not arms-length, it is a tightly integrated, top-down federated enterprise operated pursuant to the *Three-Way Agreement*. DN 1 ¶¶ 45–67; DN 11 at 5–9. The following features demonstrate that NAR does business in Georgia through GAR and the local boards as NAR's own arms:

- **Formation subject to NAR approval.** Georgia state and local Realtor chapters cannot form or affiliate without NAR's express authority and approval. GAR and each Georgia local board exist as NAR-chartered affiliates; absent NAR's charter and continuing approval, they cannot call themselves *Realtor* associations or grant their members the right to use NAR's federally registered *REALTOR*® marks.

- **Mandatory dues remitted to NAR.** Although GAR and the Georgia local boards are nominally independent entities, each is contractually obligated to collect annual dues from every member and remit NAR's portion to NAR. Georgia Realtors' ability to hold membership in their state and local boards is conditioned on NAR dues being paid. Georgia dues thus flow automatically and continuously to NAR as a matter of NAR policy.

- **Control without fiduciary duty.** NAR has structured the federated relationship so that it exercises extensive command over GAR and the local boards but disclaims any fiduciary duty to their Georgia members — notwithstanding the compulsory annual payments those members make to NAR. NAR thus takes the benefits of Georgia affiliation while purporting to owe nothing in return.

- **Compliance with a vast body of NAR rules.** GAR and the local boards must adopt, enforce, and comply with NAR's Constitution, Bylaws, Code of Ethics, Standards of Practice, Membership and Professional Standards Policies, and MLS Policies. Noncompliance jeopardizes the NAR charter and members'

use of the *REALTOR®* marks. The challenged cooperative-compensation and clear-cooperation rules are part of this body of NAR policy and are enforced against Georgia Realtors through GAR and the local boards.

- **Substantial Georgia market footprint.** Approximately 70% of Georgia Realtors hold NAR membership through GAR and their local boards, and approximately 81% of closed residential units on the two largest Georgia MLSs (Georgia MLS and FMLS) are sold by NAR members operating under NAR rules. DN 1 ¶¶ 45–67, 70–80. NAR collects substantial Georgia revenue and provides Georgia Realtors with branding, marketing, lobbying, legal, educational, and technology services.
- **Ongoing NAR presence in Georgia.** NAR officers, employees, and representatives travel to Georgia on a recurring basis for conferences, continuing education, leadership training, and association meetings.

NAR's pervasive control over the formation, funding, governance, and operations of its Georgia affiliates, combined with its continuous Georgia revenue and Georgia-directed services, establishes that NAR carries on business of a substantial character here, and nationwide. *Scophony*, 333 U.S. at 807. NAR cannot avoid that result by invoking the nominal separateness of GAR and the local boards; *Myers* and *Sherman College* reject that move where affiliates serve as the association's conduit for rule-making and enforcement. Recent litigation over the same NAR rules confirms the point. *See Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-01610 (N.D. Ill.); *Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332 (W.D. Mo.); *Gibson v. Nat'l Ass'n of Realtors*, No. 4:23-cv-00788 (W.D. Mo.); *Batton v. Nat'l Ass'n of Realtors*, No. 1:21-cv-00430 (N.D. Ill.).

**E. GAR's and the Local Boards' Georgia Contacts Are Imputed to NAR.**

Independently, jurisdiction lies on agency and conspiracy-imputation grounds. Agents' forum contacts are imputed to principals, and in antitrust actions co-conspirators' forum acts are likewise imputed to defendant conspirators. *See Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 568–71 (M.D. Pa. 2009); *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 31 (D.D.C. 2000). Under the Three-Way Agreement, GAR and the local boards act on NAR's behalf in Georgia — collecting and remitting NAR dues, enforcing NAR's Code of Ethics and Standards of Practice, disciplining rule violations, and requiring Georgia Realtors to operate under NAR's cooperative-compensation and clear-cooperation policies. Those Georgia acts are imputed to NAR whether the Court labels the relationship agency, alter-ego, or co-conspirator.

**F. Exercising Personal Jurisdiction Over NAR Comports with Due Process.**

The Supreme Court's most recent specific-jurisdiction decision, *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), forecloses NAR's due-process argument. *Ford* holds that claims need only *relate to* a defendant's forum contacts, and that systematic cultivation of a forum market supports jurisdiction. *Id.* at 1026–32. NAR systematically cultivates Georgia's residential real-estate market by chartering and overseeing GAR and the Georgia

local boards, drafting and enforcing the rules that govern Georgia Realtor conduct, collecting Georgia dues, and providing Georgia-directed services. Plaintiff's antitrust claims arise from and relate to that very cultivation. NAR itself promulgates the challenged rules, NAR itself enters the Three-Way Agreement, NAR itself charters the Georgia affiliates, and NAR itself collects Georgia dues. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), is inapposite; it barred a state court from hearing *non-resident* plaintiffs' claims based on out-of-state conduct. Here, Plaintiff is a Georgia resident whose claims arise from Georgia-directed conduct. *Id.* at 267–69.

The Eleventh Circuit's specific-jurisdiction test is likewise satisfied. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267–69 (11th Cir. 2010); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Plaintiff's claims arise out of and relate to NAR's Georgia contacts; NAR has purposefully availed itself of Georgia by chartering GAR and the local boards, contracting through the Three-Way Agreement, collecting Georgia revenue, and promulgating rules intended for Georgia enforcement; and jurisdiction imposes no undue burden — NAR has retained Atlanta counsel and appeared in this forum, and Georgia's interest in adjudicating antitrust claims affecting its real-estate markets is substantial.

## IV.  CONCLUSION

Personal jurisdiction over NAR is proper under either approach. If the Court reaches the split, it should adopt the Decoupled/Independent-Clause approach as most faithful to Section 12's text, the Supreme Court's construction in *Scophony* and *Eastman Co.*, and Congress's antitrust-enforcement purpose. Under the Decoupled approach, NAR's national contacts satisfy Fifth-Amendment due process; under the Integrated approach, NAR *transacts business* in this District through GAR and the local boards, whose Georgia contacts are imputed to NAR under agency and co-conspirator principles. Either way, exercising jurisdiction satisfies *Ford*, and Eleventh Circuit doctrine. NAR's Motion to Dismiss for lack of personal jurisdiction should be denied.

Respectfully submitted this 20th day of April, 2026.

**WEENER NATHAN PHILLIPS LLP**

*/s/ Renée A. Morgan*
RENÉE A. MORGAN
Ga. Bar No. 193064
5887 Glenridge Drive, Suite 275
Atlanta, GA 30328
Phone: (770) 392-9004
Fax: (770) 522-9004
rmorgan@wnpllp.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this document was prepared in Times New Roman font,

14 point, and complies with Local Rule 5.1(C).


<div align="center" style="margin-left:auto;">

<u>*/s/ Renée A. Morgan*</u>
RENÉE A. MORGAN
Ga. Bar No. 193064

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2026, I electronically filed the foregoing *Plaintiff's Supplemental Brief on Personal Jurisdiction Under Section 12 of the Clayton Act* with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record, including:

Mr. Mark Trigg, Esq.
Mr. Sean Kirwin, Esq.
DENTONS US LLP
303 Peachtree Street NE, Suite 5300
Atlanta, Georgia 30308
mark.trigg@dentons.com
sean.kirwin@dentons.com

This 20th day of April, 2026.

WEENER NATHAN PHILLIPS LLP

*/s/ Renée A. Morgan*
RENÉE A. MORGAN
Ga. Bar No. 193064
5887 Glenridge Drive, Suite 275
Atlanta, GA 30328
Phone: (770) 392-9004
Fax: (770) 522-9004
rmorgan@wnpllp.com
*Attorney for Plaintiff*