**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JEROME E. MILKO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:25-cv-02088-SEG |
| | § | |
| NATIONAL ASSOCIATION OF | § | |
| REALTORS®, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT NATIONAL ASSOCIATION OF REALTORS®'
RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF ON PERSONAL
JURISDICTION UNDER SECTION 12 OF THE CLAYTON ACT**

Defendant National Association of REALTORS® ("NAR") submits this brief in response to Plaintiff's Supplemental Brief on Personal Jurisdiction Under Section 12 of the Clayton Act (Dkt. No. 21, "Br."), pursuant to the Court's Order dated March 30, 2026 (Dkt. No. 17, "Order"). In its Order, the Court directed supplemental briefing to address "the basis for personal jurisdiction over Defendant under Section 12 of the Clayton Act." Order at 3. For the reasons set forth below, NAR respectfully submits that NAR does not transact business in this District within the meaning of the Clayton Act and that NAR therefore is not subject to personal jurisdiction in this District.

**ARGUMENT**

Plaintiff fails to establish that NAR transacts business in this District under Section 12 of the Clayton Act. *First*, the activities Plaintiff identifies do not reflect any substantial, day-to-day conduct by NAR in this District—they reflect, instead, the daily operations of independent state and local REALTOR® associations in Georgia. (Notably, Plaintiff's claims have no relation to the Georgia REALTOR® associations and Plaintiff is not even a member of any REALTOR® association in Georgia.) *Second*, the conduct Plaintiff attributes to NAR is not specific to Georgia in any meaningful sense; it is conduct that NAR, as a national trade association, engages in identically across every district in the country where a state or local association sits. Accepting Plaintiff's theory would nullify Section 12's "transacts business" requirement for any national organization, transforming a meaningful venue limitation into a dead letter. *Third*, Plaintiff's attempt to salvage his venue showing by imputing the Georgia state and local associations' contacts to NAR through agency and conspiracy principles is misguided—Section 12 applies its own defendant-focused standards that cannot be circumvented.

## I.    APPLICABLE LAW

Section 12 of the Clayton Act (15 U.S.C. § 22) provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or

> transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Under the majority, or "integrated," approach, the clauses are read together: in order for an antitrust plaintiff to exercise nationwide service of process (or personal jurisdiction) under Section 12, the plaintiff must first satisfy Section 12's venue provision. *See KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th Cir. 2013) ("To avail oneself of the privilege of nationwide service of process, a plaintiff must satisfy the venue provisions of Section 12's first clause."); *In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172, 1196 (N.D. Ala. 2014) (concluding "that the 'integrated' approach is the correct rule of law"); *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (adopting the integrated approach); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) (same).

Courts across the country have explained why the minority, or "decoupled," approach is an improper reading of Section 12. First, the integrated approach is more faithful to statutory interpretation because the decoupled approach requires a court to render Section 12's venue provision "superfluous" and "wholly redundant," which is disfavored as a general matter. *GTE*, 199 F.3d at 1351; *KM Enters.*, 725 F.3d at 729. Second, the legislative history of the Clayton Act indicates that Congress was "quite careful in expanding venue, rejecting several broader proposals than the one finally enacted in Section 12." *Daniel*, 428 F.3d at 425–26. Third,

logic dictates that a court follow the integrated approach, otherwise "very odd results" could occur, since plaintiffs could "mix and match Section 12's service-of-process provision with Section 1391's general venue provision [and] render[] the venue inquiry meaningless." *KM Enters.*, 725 F.3d at 729.

Thus, as applied here, venue is only proper under Section 12 if Plaintiff shows that NAR "transacts business" in this District. *See* 15 U.S.C. § 22. The Supreme Court has defined "transacts business" within the meaning of the Clayton Act as "[t]he practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character.'" *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948). "For a defendant to transact business of a 'substantial character' there must be 'some amount of business continuity and certainly more than a few isolated and peripheral contacts with the particular judicial district.'" *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 230 (S.D.N.Y. 2019). Courts have also interpreted the "transacts business" inquiry to depend "on a *realistic assessment of the nature of the defendant's business* and of whether its contacts with the venue district could fairly be said to evidence the 'practical, everyday business or commercial concept of doing business or carrying on business of any substantial character.'" *Daniel*, 428 F.3d at 429 (emphasis added).

Finally, on a motion to dismiss for lack of personal jurisdiction, unsupported allegations need not be accepted as true where the facts are contested by an affidavit.

4

*Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005) (explaining that in assessing whether a plaintiff has made a prima facie showing of personal jurisdiction, the court takes the plaintiff's factual allegations as true "unless those allegations are contested by the defendant's affidavits").

## II.   NAR DOES NOT "TRANSACT BUSINESS" IN THIS DISTRICT

Even accepting Plaintiff's new, improper, unpleaded, and unsupported allegations as true (*see* Br. 9–10), Plaintiff has not established that NAR transacts business in this District.  None of the conduct Plaintiff describes is the "practical, everyday business" of a "substantial character" required to establish venue under Section 12.  *Scophony*, 333 U.S. at 807.

In newly asserted allegations absent from the Complaint, Plaintiff now alleges that NAR "tightly controls" the state and local Georgia REALTOR® associations (Br. 9), but even the "features" of this control that Plaintiff identifies do not meet the standard of establishing that *NAR* transacts business in this District.  Plaintiff attempts to contort the fact that the state and local Georgia REALTOR® associations are chapters of NAR into an argument that NAR itself conducts the daily business of the state and local associations.  Not so.

For example, Plaintiff does not allege that *NAR* enforces the NAR Constitution or Bylaws *in Georgia*.  In fact, Plaintiff attributes that task to the state and local associations.  Br. 9 ("GAR and the local boards must adopt, enforce, and

comply with NAR's Constitution, Bylaws, Code of Ethics."). And NAR's promulgation of national rules, which are then adopted and enforced in Georgia by the Georgia associations, does not suffice to show that *NAR* transacts business in this District. *See, e.g.*, *Daniel*, 428 F.3d at 429–30 (finding that a national corporation, whose activities and development of training and testing standards occurred at its Michigan headquarters, did not "transact business" in New York); *World Ass'n of Icehockey Players Unions N. Am. Div. v. Nat'l Hockey League*, No. 24-cv-1066, 2024 WL 4893266, at *18 (S.D.N.Y. Nov. 26, 2024) (holding that "[m]erely having rules and potential penalties in place alone is insufficient to show the transaction of business in this District" where the plaintiffs pointed to no conduct showing that *the defendant* supervised or enforced those rules in the district); *Acad. of Ambulatory Foot Surgery v. Am. Podiatry Ass'n*, 516 F. Supp. 378, 380–81 (S.D.N.Y. 1981) (declining to impute a local chapter's activities to the national organization even where the local chapter's constitution and bylaws paralleled the national chapter's, and where disciplinary decisions at the local chapter were reviewable by the national chapter); *Elizabeth Hosp., Inc. v. Richardson*, 167 F. Supp. 155, 158–59 (W.D. Ark. 1958) (refusing to impute activities of local medical societies to the American Medical Association based solely on the societies' obligation to comply with the AMA's constitution and bylaws).

As to the collection of dues, Plaintiff acknowledges that NAR does not itself collect dues in Georgia.  Br. 9.  The mere fact that a portion of dues collected in Georgia—collected by Georgia associations for providing services to their Georgia members—are ultimately remitted to NAR does not mean that NAR transacts business in Georgia.  *See Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*, No. 20-cv-62, 2021 WL 2125357, at *5 (D. Vt. Jan. 13, 2021) (rejecting the plaintiff's argument that the defendant's collection of dues from members residing in the district established that the defendant "transact[ed] business" there); *see also Hansen v. Nw. Univ.*, No. 24-cv-9667, 2025 WL 2731378, at *6 (N.D. Ill. Sept. 24, 2025) (finding the fact that the non-resident defendant-universities received tuition payments from in-district residents insufficient to establish that the non-resident defendants transacted business "of any substantial character" in the district).

Another of Plaintiff's new contentions is that "Georgia state and local Realtor chapters cannot form or affiliate" or use NAR's REALTOR® trademark without NAR's approval.  Br. 9.  But Plaintiff does not explain how the formation of a local chapter of a national organization, or the use by that local chapter of a trademark, demonstrates that *NAR* has an everyday business presence of a substantial character in Georgia.  *See Acad. of Ambulatory Foot Surgery*, 516 F. Supp. at 380–81 (declining to impute local chapter's activities to national organization where the local chapter was separately incorporated and financially self-sufficient with its own

7

dues structure, the local-chapter members were required to be members of the national chapter, the local chapter's constitution and bylaws paralleled the national chapter's, and disciplinary decisions made by the local chapter were reviewable by the national chapter); *Elizabeth Hosp.*, 167 F. Supp. at 158–59 (declining to attribute activities of local medical societies to the American Medical Association); *see also Athletes Foot of Del., Inc. v. Ralph Libonati Co.*, 445 F. Supp. 35, 44 (D. Del. 1977) (finding the plaintiffs failed to demonstrate that the defendants controlled a franchisee under a franchise agreement).

Indeed, Plaintiff's argument that NAR transacts business in this District because there are a certain number of REALTORS® in Georgia (Br. 10) has been rejected by courts across the country. *See, e.g.*, *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 437–38 (5th Cir. 1977) ("[A] professional association does not 'transact business' in a judicial district *merely because some of its members reside in the district* and receive the association's publications there." (emphasis added)); *Friends of Animals, Inc. v. Am. Veterinary Med. Ass'n*, 310 F. Supp. 620, 624 (S.D.N.Y. 1970) (same).

Plaintiff's other proffered "features" of NAR's control are conclusory and fare no better. Plaintiff does not explain, for example, how NAR "exercises extensive command over GAR and the local boards" (Br. 9), when in fact the rest of the conduct Plaintiff offers describes how the state and local associations operate

8

independently under the national federated structure. *See Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264, 1278 (S.D. Fla. 2007) (explaining that general allegations "need not be accepted as true" where "they are contradicted by more specific allegations"). Plaintiff also offers no support for the conclusory allegation that "NAR officers, employees, and representatives travel to Georgia on a recurring basis." Br. 10.

A case Plaintiff cites, *Myers v. American Dental Ass'n*, 695 F.2d 716 (3d Cir. 1982), demonstrates why venue is improper here. *Myers* did not hold—as Plaintiff asserts—that a national association automatically "transacts business" in every district where the local chapters of the national association operate. Br. 8, 10. Rather, *Myers* focused on whether the national association *itself* engaged in substantial activity or exercised direct control in the district. 695 F.2d at 730–31. Here, Plaintiff points only to daily business activities undertaken by the state and local REALTOR® associations in Georgia. In other words, unlike cases where the national chapter's own regulatory or operational conduct in the district is substantial, the facts alleged here show, at most, that Georgia state and local REALTOR® associations operate locally within a national framework and control their own day-to-day business, even if that business includes, for example, collecting dues—for services *that the state and local associations provide* to their members—where a portion of those dues is ultimately remitted to NAR.

9

*Sherman College of Straight Chiropractic v. American Chiropractic Ass'n*, 534 F. Supp. 438, 439 (N.D. Ga. 1982), also does not support Plaintiff's argument. There, the court found that a national trade association transacted business in the district based on the combined effect of several activities the association conducted in the district. *Id.* at 442, 445 (addressing the plaintiff's allegations that the defendant's activities in the district included sponsoring symposiums, distributing public service announcements, participating in the sale of an insurance policy, sending promotional materials to a local chiropractic school, and selling educational materials). Contrary to Plaintiff's assertion (Br. 8), *Sherman College* does not stand for the proposition that a national association transacts business through its local affiliates, as the court did not reach the issue of the degree of control the defendant had over an affiliated organization. 534 F. Supp. at 444 n.11.

## III. PLAINTIFF'S PROFFERED EXAMPLES WOULD NULLIFY SECTION 12'S "TRANSACTS BUSINESS" REQUIREMENT

The activities Plaintiff offers as proof of NAR's business presence in Georgia—such as state and local association enforcement of NAR's rules, their collection of dues, and their needing approval to use the REALTOR® trademark (*e.g.*, Br. 9–10)—are not specific to Georgia. These are uniform, nationwide activities that NAR would undertake with respect to any and every other state and local REALTOR® association in districts across the country, as a matter of NAR's basic organizational function as a national trade association. These activities are not

specific to this District and say nothing about whether NAR transacts business in this District. And Plaintiff acknowledges as much. Br. 10 ("NAR carries on business of a substantial character here, *and nationwide*." (emphasis added)).

Plaintiff's theory that NAR transacts business in this District would subject NAR, and any other national trade association with local associations, to venue in every federal district in the United States where a local association exists—a result that effectively nullifies Section 12's "transacts business" requirement. *KM Enters.*, 725 F.3d at 729 (explaining that Congress intended there be "*some* limits on venue" when passing Section 12 of the Clayton Act, "be it that the defendant 'transacts business' in the district"). And courts have rejected the argument that the mere fact that an organization operates nationally means it transacts business in every district. *See Golf City*, 555 F.2d at 437–38; *Friends of Animals*, 310 F. Supp. at 624.

## IV.  THE GEORGIA ASSOCIATIONS' CONTACTS CANNOT BE IMPUTED TO NAR

Plaintiff's argument that NAR transacts business in this District under agency and conspiracy principles also fails. Courts have declined to apply agency and conspiracy theories to the venue determination. *See, e.g.*, *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 755 n.8 (N.D. Cal. 2015) ("[T]he Ninth Circuit has rejected the idea that a conspirator's in-forum acts can be attributed to his co-conspirators for venue purposes."); *Albert Levine Assocs. v. Bertoni & Cotti*, 309 F. Supp. 456, 461 (S.D.N.Y. 1970) (explaining the Second Circuit's

11

rejection of imputing a co-conspirator's presence as agency to establish venue); *SSA Bonds*, 420 F. Supp. 3d at 229, 236 (treating conspiracy jurisdiction as a separate personal-jurisdiction doctrine, separate from venue under Section 12).

Plaintiff cites no case to the contrary, and the cases that Plaintiff does cite do not support the application of agency or conspiracy principles to establishing venue under Section 12.  *See* Br. 11 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 135–39 (2014) (explaining that "[a]gency relationships . . . may be relevant to the existence of *specific* jurisdiction," because "[o]ne may be an agent for some business purposes and not others [such] that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose," and rejecting the argument that agency principles sufficed to establish general jurisdiction over a foreign corporation based solely on its subsidiaries' contacts with the forum state); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 571 (M.D. Pa. 2009) (finding that the plaintiffs failed to make a prima facie showing of general personal jurisdiction under an alter ego theory); *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 31 (D.D.C. 2000) (assessing, without deciding, conspiracy jurisdiction in the context of the Illinois Long-Arm Statute, not in the context of Section 12)).

## V.    PLAINTIFF'S DUE PROCESS ARGUMENT IS UNAVAILING

Plaintiff's reliance upon *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), falls flat.  Plaintiff's own allegations belie his claim that

12

"Plaintiff's antitrust claims arise from and relate to" NAR's "systematic[] cultivat[ion of] Georgia's residential real-estate market." Br. 11–12. Whereas in *Ford* the plaintiffs actually suffered injury through their Ford automobiles in the subject states, 592 U.S. at 356, no such nexus exists here. In actuality, Plaintiff's allegations have no connection to Georgia—Plaintiff does not allege that he is a member of the state or any local REALTOR® association in Georgia, that he engages in real estate transactions in Georgia, or that he uses any of the services at issue in Georgia. *See* Compl. ¶¶ 28, 33–35, 54, Dkt. No. 1. At bottom, Plaintiff's assertion that NAR "transacts business" in this District is nothing more than an effort by Plaintiff to impermissibly parlay his own Georgia domicile into personal jurisdiction over NAR. *See Pirtle v. Netflix, Inc.*, No. 21-cv-2096, 2021 WL 6751868, at *2 (N.D. Ga. Oct. 7, 2021) (dismissing and transferring case for lack of personal jurisdiction where none of the plaintiff's Georgia-based allegations arose from Netflix's conduct in Georgia); *see also Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1311 (11th Cir. 2022) (affirming dismissal for lack of personal jurisdiction where only the "effects" of the defendant's actions were felt in the forum and the defendant was not "engaged in any 'activity or occurrence'" in the forum (citing *Ford*, 592 U.S. at 359–60)).

13

## CONCLUSION

For the reasons set forth above and in NAR's Motion to Dismiss (Dkt. Nos. 8-1, 13), Plaintiff has not established personal jurisdiction over NAR in this District and thus the Complaint should be dismissed.

Respectfully submitted this 4th day of May, 2026.

DENTONS US LLP

*/s/Mark G. Trigg*
Mark G. Trigg
Georgia Bar No. 716295
Sean M. Kirwin
Georgia Bar No. 318130
303 Peachtree Street, NE Suite 5300
Atlanta, Georgia 30308
Tel: (404) 527-4000
mark.trigg@dentons.com
sean.kirwin@dentons.com

*Counsel for Defendant National Association of REALTORS®*

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document was prepared in Times New Roman font, 14 point, and complies with Local Rule 5.1(C).

*/s/Mark G. Trigg*

Mark G. Trigg
Georgia Bar No. 716295

15

**CERTIFICATE OF SERVICE**

I certify that on May 4, 2026, Defendant National Association of REALTORS®' Response to Plaintiff's Supplemental Brief on Personal Jurisdiction Under Section 12 of the Clayton Act was electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

/s/Mark G. Trigg
Mark G. Trigg
Georgia Bar No. 716295

16